IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

FLO PAC, LLC,                          *

    Plaintiff,                     *

        v.                         *   CIVIL NO.: WDQ-09-0510

NUTECH LLC, *et al.*,                  *

    Defendants.                    *

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Flo Pac LLC sued NuTech LLC, Cliff Kratz, Jeffrey Vaught, and ten John Doe Defendants for Lanham Act violations and other claims. Pending is Flo Pac's motion for a preliminary injunction. For the following reasons, the motion will be granted in part and denied in part.

I.  Background

Flo Pac designs and sells brass and steel valves used in heating, ventilation, and air conditioning (HVAC) systems. Compl. ¶ 10.

Flo Pac asserts that in 2002, NuTech agreed to act as Flo Pac's agent in procuring Flo Pac valves manufactured in China. *Id.* at ¶ 13. NuTech contends that in January 2003 it contracted with Flo Pac to distribute valves that NuTech designed and produced. Hr'g Tr. at 31-40.

1

Between June 2003 and April 2007, Flo Pac states that it provided NuTech with drawings of the valves to facilitate production. *Id.* at ¶ 14. NuTech contends that its employee, George Von Hoff, designed the valves, and that NuTech and Flo Pac each paid half the initial tooling cost for production in China. Hr'g Tr. at 39-40. Flo Pac contends that NuTech arranged for two Chinese manufacturers to produce the Flo Pac valves and stamp them with the "FLO-PAC" mark. Compl. ¶ 14.

In the Fall 2007 or Winter 2008, NuTech tried to buy Flo Pac. *Id.* at ¶ 15; Hr'g Tr. at 43. At that time, Flo Pac contends that NuTech ordered a Chinese manufacturer to: (1) produce half the brass valves without the "FLO-PAC" mark; and (2) grind off the "FLO-PAC" mark on half the steel valves. Compl. at ¶ 17. When NuTech received the misbranded[1] and unbranded valves, it told Flo Pac that it had received half of Flo Pac's order, and that the other half was on back order. *Id.* NuTech contends that Flo Pac sought to buy NuTech's product from the Chinese manufacturer, and that it sought to sell the valves itself because Flo Pac was not selling enough valves. Hr'g Tr. at 42-45.

In the Spring 2008, NuTech hired Defendant Jeffrey Vaught, Flo Pac's former sales manager. Compl. ¶ 16. Later, Flo Pac

---

[1] The misbranded valves are those with the "FLO-PAC" mark ground off. *See* Compl. at ¶ 17.

2

discovered that while a Flo Pac employee, Vaught had emailed Cliff Kratz, NuTech's President, graphics and other Flo Pac property. *Id.* at ¶ 22, Ex. C, E.  Vaught had also provided Kratz a sample valve bearing the NuTech mark instead of the Flo Pac mark. *Id.*

Flo Pac obtained an unbranded brass valve from a third party vender. *Id.* at ¶ 18, Ex. B.  From the import records Flo Pac discovered that NuTech had received a large shipment from China when Flo Pac received half its valves. *Id.*  Flo Pac contends that NuTech copied the valve drawings, valve photographs, and information from Flo Pac's website to aid its sale of the unbranded and misbranded valves. *Id.* at ¶ 19, Ex. F.

When Flo Pac demanded that a third party seller stop selling the unbranded and misbranded valves, NuTech intervened, contending that the valves were its property. *Id.* at ¶ 20.  On March 3, 2009, Flo Pac filed a complaint against the Defendants and a motion for a temporary restraining order and preliminary injunction.  Paper Nos. 1, 2.  On March 10, 2009, the Court held a motions hearing.  NuTech acknowledged no right to retain or sell "FLO-PAC" marked valves or other products.  Hr'g Tr. at 23-25.  The parties consented to a temporary Order that until March 30, 2009, restrained NuTech from producing, promoting, marketing, advertising, selling, offering for sale, or distributing any valve or other product bearing the "FLO-PAC" mark.

II.  Analysis

    A.   Standard of Review

Preliminary injunctions are granted only in limited circumstances when there is a need to protect the status quo and prevent irreparable harm.  *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 524 (4th Cir. 2003).  The Court examines: (1) the likelihood of irreparable harm to Flo Pac if the injunction is denied; (2) the likelihood of harm to the Defendants if the injunction is granted; (3) the likelihood that Flo Pac will succeed on the merits; and (4) the public interest. *Blackwelder Furniture v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 193 (4th Cir. 1977).  The balance of harm to Flo Pac and the Defendants is the most important consideration, and the likelihood of success is less important when the balance of harm strongly favors one party.  If the balance tilts decidedly in favor of Flo Pac, preliminary injunctive relief is warranted. *Id.* at 816 (internal citations omitted).  Flo Pac has the burden of showing the need for preliminary relief.  *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).

    B.   Balance of Harms

Flo Pac contends that its reputation and goodwill will be irreparably harmed if NuTech is allowed to sell the unbranded and misbranded valves.  Flo Pac also contends that NuTech's activity irreparably harms the value of its mark and its market share.

4

NuTech contends that Flo Pac--which is merely a distributor--will not be harmed by NuTech's sale of the valves because Flo Pac will be able to distribute valves produced by manufacturers other than NuTech.

Flo Pac contends that NuTech will suffer minimal harm if the temporary restraining order is granted because the injunctive relief will only prevent NuTech from selling products it is not authorized to sell.  NuTech contends, however, that it will suffer irreparable harm if it is not allowed to sell the unbranded and misbranded valves because it has invested several years of labor and over $160,000 in developing and manufacturing the valves.

Flo Pac has failed to show that its market share or mark will be seriously diminished if NuTech is allowed to sell the misbranded or unbranded valves.  Similarly, it is unclear whether NuTech has the authority to sell the unbranded or misbranded valves.  Accordingly, neither Flo Pac nor NuTech has demonstrated that it will suffer irreparable harm if the injunction is denied with regards to the misbranded and unbranded valves.

    C.   Likelihood of Success on the Merits

Flo Pac contends that its Lanham Act claim is likely to succeed.  The Lanham Act prohibits a seller from misrepresenting "someone else's goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003).

Such misrepresentation is called "reverse passing off."[2]  *Id.*

To recover under the Lanham Act, Flo Pac must prove that: (1) the valves originated with Flo Pac;[3] (2) NuTech falsely designated the origin of the work; (3) the false designation of origin was likely to cause consumer confusion; and (4) Flo Pac was harmed by NuTech's false designation of origin.  *Lipton v. Nature Co.*, 71 F.3d 464, 473 (2nd Cir. 1995).

Flo Pac contends that to obtain injunctive relief, "a plaintiff must [merely] demonstrate a likelihood of deception or confusion on the part of the buying public . . ."  *Sun Trading Distributing Co., Inc. v. Evidence Music, Inc.*, 980 F.Supp. 722,

---

[2] NuTech contends that Flo Pac has no "reverse passing off" claim because the theory (1) is not recognized in the Fourth Circuit, and (2) is only applicable to cases involving false claims of ownership in expressive or inventive works.  Although the Fourth Circuit has never recognized "reverse passing off," *see Xoom, Inc. v. Imageline*, *Inc.*, 323 F.3d 279, 286 (4th Cir. 2003), the Supreme Court recognized the doctrine in *Dastar Corp*. 539 U.S. at 28 n.1.  Although *Dastar* involved claims of ownership of a movie--a creative work, the doctrine has been more broadly applied in situations similar to Flo Pac's complaint.  *See GNI Waterman, LLC v. A/M Valve Company, LLC*, 2007 U.S. Dist. LEXIS 68715 (E.D. Cal. Sept. 7, 2007) (defendant corporation copied plaintiff's irrigation control valves, changed the valve color, and sold the valves as its product); *Matsushita Electric Corp. of America v. Solar Sound Systems Inc.*, 381 F. Supp. 64 (S.D.N.Y. 1974) (*disapproved in part by Vibrant Sales, Inc. v. New Body Boutique, Inc.*, 652 F.2d 299, 211 (2nd Cir. 1981) (defendant placed its name on plaintiff's model portable radio and used the image in advertisements).  For the purposes of Flo Pac's motion for preliminary relief, the Court will recognize a "reverse passing off" claim.

[3] The "originator" of a good may be the trademark owner "who commissioned or assumed responsibility for production of the physical product."  *Dastar*, 539 U.S. at 32.

727 (S.D.N.Y. 1997) (*citing PPX Enters., Inc. v. Audiofidelity Enters*., Inc., 818 F.2d 266, 271 (2nd Cir. 1987).  When the misrepresentation is "literally or explicitly false, however, the court may grant [injunctive] relief without reference to the buying public."  *Id*. (*citing Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software*, Inc., 880 F. Supp. 1005, 1021-22 (S.D.N.Y. 1994).  "In contrast, a plaintiff seeking money damages must establish actual consumer confusion or deception."  *Id.* at 728.[4]

Flo Pac asserts that as the designer and producer of the unbranded and misbranded valves, it originated them.  Flo Pac also contends that: (1) NuTech falsely designated the valves by misbranding and unbranding them, (2) it is highly likely that the false designation has caused consumer confusion, and (3) Flo Pac has suffered economic damages, loss of advertising and customer goodwill, diminution in value of its mark, and loss of market share as a result of NuTech's actions.  Thus, Flo Pac contends that its claims for injunctive relief and damages under the Lanham Act are likely to succeed.

It is disputed whether Flo Pac or NuTech designed and ordered the production of the valves.  *See* Compl. at ¶ 10; Hr'g Tr. at 32-33.  It is also disputed whether (1) NuTech falsely designated the misbranded and unbranded valves, *see* Compl. ¶ 24,

---

[4] The Fourth Circuit has not determined whether a lower level of proof is required when a plaintiff seeks injunctive relief rather than damages.

Hr'g Tr. at 25; (2) a false designation has caused consumer confusion; and (3) Flo Pac has suffered economic damages and loss of customer goodwill, diminution in value of its mark, and loss of market shares.  Accordingly, Flo Pac has not shown a likelihood of success on the merits sufficient to justify preliminary injunctive relief.

    D.    Public Interest

In the ordinary private litigation, the public interest is not implicated.  Flo Pac contends that a temporary restraining order is in the public interest because it would: (1) prevent NuTech's wrongful misappropriation of its talents, *see Rosenfeld v. W.B. Saunders*, 728 F.Supp. 236, 241 (S.D.N.Y. 1990); (2) prevent NuTech from depriving Flo Pac of the value of its name and goodwill that stem from public knowledge of the actual source of the product, *Smith v. Montoro*, 648 F.2d 602, 607 (9th Cir. 1981); and (3) ensure that valve purchasers know the true source of their product, *Rosenfeld*, 728 F.Supp. at 241.

NuTech asserts, however, that the public interest in a free market will be harmed if NuTech is prevented from selling the valves it designed and manufactured.

Because it is disputed whether NuTech wrongfully misappropriated Flo Pac's talent, deprived it of advertising value and goodwill, or prevented valve purchasers from knowing the true source of their product, Flo Pac has failed to

8

demonstrate that preliminary injunctive relief is in the public interest.

III. Conclusion

    For the reasons state above, Flo Pac's motion for preliminary injunctive relief restraining NuTech's production, sale, distribution, promotion, or offer of sale of the unbranded and misbranded valves will be denied.  Because NuTech concedes that it has no right to sell, distribute, or advertise valves bearing the "FLO-PAC" mark, the Order restraining NuTech from producing, promoting, marketing, advertising, selling, offering for sale, or distributing any valve or other product bearing the "FLO-PAC" mark will continue.


| March 30, 2009 | /s/ |
|---|---|
| Date | William D. Quarles, Jr.<br>United States District Judge |