```
            IN THE UNITED STATES DISTRICT COURT FOR
           THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
FLO PAC, LLC,
                                *
     Plaintiff,
                                *
          v.                         CIVIL NO.: WDQ-09-0510
                                *
NUTECH, LLC et al.,
                                *
     Defendants.
                                *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Flo Pac, LLC ("Flo Pac") sued NuTech, LLC ("NuTech"), Cliff Kratz, Jeffrey Vaught, and others for violations of the Lanham Act[1], breach of contract, and several tort claims.  Pending are Kratz's motions to dismiss for failure to state a claim and lack of personal jurisdiction, and the Kratz and Vaught motion to strike Flo Pac's aiding and abetting claim.  For the following reasons, Kratz's motion to dismiss for lack of personal jurisdiction will be granted; the other motions will be denied.

I.   Background

Flo Pac is a limited liability company organized in Maryland with its principal place of business in Jessup, Maryland.  Compl.

---

[1] 15 U.S.C. § 1125(a) (2006).

¶ 1.[2]  Flo Pac designs and sells brass and steel valves that control pressure and flow in heating, ventilation, and air conditioning ("HVAC") systems.  *Id*. ¶ 10.  NuTech is a Pennsylvania limited liability company with its principal place of business in Telford, Pennsylvania.  *Id*. ¶ 2.  Like Flo Pac, it sells HVAC components.  *Id*. ¶ 2.  Kratz is the managing member of NuTech.  Kratz Decl. ¶ 1.  Vaught was Flo Pac's sales manager until spring 2008, when he joined NuTech.  Compl. ¶ 4, 16.

In 2002, NuTech agreed to act as Flo Pac's agent in China to find a brass and steel valve manufacturer.  *Id*. ¶ 13.  Flo Pac gave NuTech valve drawings, and NuTech arranged for two manufacturers to produce them. *Id*. ¶ 14.  One manufacturer made brass valves; the other, steel valves.  *Id*.  All the valves were to bear the "FLO-PAC" mark.  *Id*.

In January 2008, NuTech offered to buy Flo Pac.  *Id*. ¶ 15. Anticipating that its offer would be accepted, and that it would soon begin selling the valves as its own products, NuTech instructed the manufacturers that only half of the valves ordered were to bear the "FLO-PAC" mark.  *Id*. ¶ 17.  Because the manufacturers had completed the order with the "FLO-PAC" mark on all the valves, NuTech had the brass valve manufacturer remove the mark from half the order. *Id*.  The steel valve manufacturer

---

[2]For the pending motions, Flo Pac's well-pleaded allegations are accepted as true.  *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

2

was unable to remove the mark, so NuTech arranged to have the mark ground off half that order. *Id*.

NuTech delivered to Flo Pac only those valves bearing the "FLO-PAC" mark, and told Flo Pac that the rest of the valves were on backorder. *Id*. After a third party vendor gave Flo Pac a Chinese-manufactured valve without a "FLO-PAC" mark, Flo Pac became suspicious and soon discovered that NuTech had retained the half of the shipment supposedly on backorder. *Id*. Flo Pac also discovered that NuTech had sold these valves to third parties under its own name. *Id*. ¶ 20. Kratz, NuTech's managing member, directed this operation. *Id*. ¶ 3.

While still at Flo Pac, Vaught assisted Kratz by emailing him Flo Pac advertising materials. *Id*. ¶ 22. NuTech used these materials to develop a website and catalog that advertised the misappropriated valves. *Id*.

On March 3, 2009, Flo Pac filed this suit. Paper No. 1. Flo Pac also moved for a temporary restraining order and preliminary injunction to prevent NuTech from producing, promoting, marketing, advertising, selling, offering for sale, or distributing any products that at any time bore Flo Pac's mark. Paper No. 2. Following a hearing on March 10, 2009, the parties agreed to a temporary Order that restrained NuTech from dealing in products bearing the "FLO-PAC" mark until March 30, 2009. Paper No. 16.

On March 30, 2009, the Court denied Flo Pac's motion to enjoin NuTech's dealing in valves without the "FLO-PAC" mark, but continued the injunction against NuTech's sale of valves bearing Flo Pac's mark. Paper No. 16.

On April 10, 2009, NuTech and Vaught answered Flo Pac's complaint. Paper No. 19. On April 17, 2009, Kratz moved to dismiss the complaint for failure to state a claim and for lack of personal jurisdiction. Paper No. 21. Kratz and Vaught also moved to strike Flo Pac's aiding and abetting claim. *Id.*

II. Analysis

   A. Personal Jurisdiction

Kratz contends that he has had insufficient contacts with Maryland for personal jurisdiction over him. Kratz is a resident of Pennsylvania, and owns no property in Maryland. Kratz Decl. ¶ 3, 7. His only contacts with the state were made on behalf of NuTech in the course of its relationship with Flo Pac. *Id*. ¶ 6.

   The plaintiff has the burden of proving personal jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).[3]

---

[3] "If the existence of jurisdiction turns on disputed factual questions, the court may resolve the challenge on the basis of a separate evidentiary hearing or may defer ruling pending receipt at trial of evidence relevant to jurisdiction." *Id.* When, as here, the court addresses the questions "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing [of jurisdiction] in

4

The Court must determine whether the Maryland long-arm statute authorizes jurisdiction.[4] If it does, the Court determines whether the exercise of jurisdiction comports with due process under the Fourteenth Amendment to the U.S. Constitution.[5] Because the Maryland long-arm statute is co-extensive with the scope of jurisdiction permitted by the Due Process Clause, the statutory and constitutional inquiries merge.[6]

The Maryland long-arm statute limits jurisdiction to claims "aris[ing] from any act enumerated in the statute." Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). A plaintiff must "identify a specific . . . provision authorizing jurisdiction." *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). Then, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause."

---

order to survive the jurisdictional challenge." *Id.* "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

[4]*See Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993).

[5] *Id.*

[6]*Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396-97 (4th Cir. 2003); *Johansson Corp. v. Bowness Constr. Co.*, 304 F. Supp. 2d 701, 704 (D. Md. 2004).

*Id.*

Flo Pac asserts that Kratz is subject to personal jurisdiction as one who "transacts any business or performs any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). The parties agree that, as NuTech's managing member, Kratz did business with Flo Pac on several occassions. Def. Mot. to Dismiss at 5; Pl's Opp. at 9. But that alone did not bring him within the long-arm statute; Flo Pac must also show that its claims "aris[e] from" Kratz's business transactions here. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). In other words, jurisdiction under the long-arm statute is "specific" rather than "general." *See Jason Pharm., Inc. v. Jianas Bros. Packaging Co.*, 94 Md. App. 425, 617 A.2d 1125 (Md. Ct. Spec. App. 1993) (Under the long-arm statute, "[s]pecific jurisdiction exists whe[n] the cause of action arises out of a party's contacts with the forum state."). Because Flo Pac alleges specific jurisdiction, Kratz's contacts with Maryland must provide "the basis for the suit" against him. *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, LLC, 388 Md. 1, 22, 878 A.2d 567, 580 (1995).[7]

---

[7] "If the defendant's contacts with the State are not the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent contacts with the State. To establish general jurisdiction, the defendant's activities in the State must have been continuous and systematic." *Beyond Systems*, 878 A.2d at 580. Flo Pac concedes that Kratz's contacts with Maryland are not sufficient for

6

Further, subsection (b)(1) confers jurisdiction based on acts within Maryland; it cannot provide jurisdiction based on acts outside the state, even if the effects of those acts are felt within the state.[8]  Although "all elements of a cause of action need not be founded on acts that have taken place in Maryland," the plaintiff must show "some purposeful act in Maryland in relation to one or more of the elements of [the] cause of action."  *Talgen Corp. v. Signet Leasing & Fin. Corp.*, 104 Md. App. 663, 670, 657 A.2d 406, 409 n.3 (Md. Ct. Spec. App. 1995).

Flo Pac has not shown that Kratz's business contacts with Maryland provide the basis for its suit against him.  Although Flo Pac's complaint describes in detail the conduct giving rise to Flo Pac's claims against Kratz, it does not mention where that conduct took place or its connection to Maryland.[9]  In its

---

general jurisdiction.  Pl.'s Opp. at 9.

[8]*See Layton v. AAMCO Transmissions, Inc.*, 717 F. Supp. 368, 370 (D. Md. 1989); *see also Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 911 (D. Md. 2008); *Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 (D. Md. 2006).

[9]The complaint alleges that personal jurisdiction over Kratz is proper because "[he] conduct[s] business in the State of Maryland and within this judicial district."  Compl. ¶ 9.  It further alleges that venue is proper in the District of Maryland because a "substantial part of the events and omissions giving rise to this claim arose" here.  *Id*.  These allegations are the complaint's only attempts to connect this case to Maryland, and Flo Pac does not allege facts to support them.  And, as noted above, Flo Pac has conceded that Kratz's contact with Maryland is not sufficient for general jurisdiction; thus, Flo Pac must show

opposition, Flo Pac attempts to establish a connection through the affidavit of Richard Brady, a Flo Pac officer.  Brady describes two of Kratz's visits to Maryland and states that "the wrongdoing alleged in the lawsuit arose out of the relationship between Flo Pac and NuTech, [and] much of it occurred in the State of Maryland . . . including those things that Mr. Kratz either did himself or directed NuTech or the other defendants to do."  Brady Aff. ¶ 4.  Brady also states that Kratz came to Maryland for meetings at Flo Pac's office and to meet with Flo Pac representatives at other locations in the state.  *Id*. ¶ 4, 5.  However, none of these meetings is related to Flo Pac's claims against Kratz.[10]  Because Flo Pac has not alleged that Kratz's

---

that Kratz's contacts provide the basis for the suit against him.  It has not made this showing.

[10] Brady makes only one statement that attempts to connect Kratz's activities in Maryland with Flo Pac's claims.  He described Kratz's meeting with Vaught at "the FDA building in suburban Maryland" on June 23, 2008 to address concerns about leaking Flo Pac valves. Brady Aff. ¶ 5.  Brady states that he "believe[s]" Vaught "diverted to Mr. Kratz Flo Pac's business opportunities" at this meeting.  *Id*.  The meaning of this statement is unclear, and, in any event, mere speculation about this meeting is not sufficient for personal jurisdiction over Kratz.

Brady also described a meeting he had with Kratz at Flo Pac's Maryland offices on January 9, 2008, during which he and Kratz "discuss[ed] a number of issues regarding [Flo Pac and NuTech's] relationship, including pricing matters, the straining of NuTech's relationship with Rian Valve as a result of NuTech's apparent overestimation of the number of valves that would be ordered, and NuTech's offer to buy Flo Pac's business...."  *Id*. ¶ 4.  It is unclear how these discussions relate to Flo Pac's claims against Kratz.

8

business activities in Maryland provide the basis for its suit against him, Kratz is not subject to personal jurisdiction under § 6-103(b)(1) of the long-arm statute.

Flo Pac also contends that there is personal jurisdiction because Kratz "cause[d] tortious injury in the State by an act or omission in the State."  Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3).  Like subsection (b)(1), subsection (b)(3) requires a plaintiff to show that acts in Maryland gave rise to his claims. *Layton*, 717 F. Supp. at 370.  Flo Pac has alleged injury in Maryland, but nowhere in the complaint or in its opposition has Flo Pac shown that this injury resulted from Kratz's acts or omissions in Maryland.[11]

Because Flo Pac has not shown that its claims against Kratz arose from his activities in Maryland, Flo Pac has not shown a prima facie case of personal jurisdiction under Maryland's long-arm statute.  Accordingly, Kratz's motion to dismiss will be granted.

B.  Vaught's Motion to Strike

Vaught moves to strike Flo Pac's aiding and abetting claim. Paper No. 23.  He contends that Maryland does not yet recognize

---

[11] Flo Pac again argues that there is jurisdiction based on Brady's affidavit, but Brady merely asserts that Kratz committed "wrongdoing" in Maryland.  Brady Aff. § 3.  Brady does not describe that wrongdoing or how it relates to Flo Pac's claims against Kratz.

the independent tort of aiding and abetting a tortfeasor.  *Id*. He is incorrect.  *Alleco, Inc. v.  Harry & Jeanette Weiberg Found*., 340 Md. 176, 665 A.2d 1038, 1049 (1995).  Vaught's motion will be denied.

III. Conclusion

For the reasons stated above, Kratz's motion to dismiss will be granted, and Vaught's motion to strike will be denied.


<u>October 1, 2009</u>                              <u>       /s/                  </u>
Date                                    William D. Quarles, Jr.
                                        United States District Judge

10